

NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 00532
JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
SANTORO, DRIGGS, WALCH,
KEARNEY, HOLLEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:    702/791-1912
Email:        nsantoro@nevadafirm.com
              jboyle@nevadafirm.com

JAMES P. FOGELMAN, ESQ.
Nevada Bar No. 09803
WILLIAM H. EDMONSON, ESQ.
Admitted Pro Hac Vice
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:    213/229-7000
Facsimile:    213/229-7520
Email:        jfogelman@gibsondunn.com
              wedmsonon@gibsondunn.com

*Attorneys for Harrah's License Company, LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ULTRA INTERNET MEDIA, S.A., a company organized under the laws of Nevis, West Indies,<br><br>Plaintiff,<br><br>v.<br><br>HARRAH'S LICENSE COMPANY, LLC, a Nevada limited liability company,<br><br>Defendant. | CASE NO.:   2:10-cv-00455-JCM-RJJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

This matter came before the Court on April 28, 2010 for the hearing on Plaintiff Ultra Internet Media, S.A.'s ("UIM") Motion for Preliminary Injunction (the "Motion for PI"). UIM appeared and was represented by David T. Duncan, Esq. and the law firm of Marquis & Aurbach. Defendant Harrah's License Company, LLC ("Harrah's License") appeared and was represented by James P. Fogelman, Esq. and the law firm of Gibson, Dunn & Crutcher LLP, and James D. Boyle, Esq. and the law firm of Santoro, Driggs, Walch, Kearney, Holley &

Thompson. The Court having reviewed the papers submitted in support of and in opposition to the Motion for PI, and having heard the oral argument of counsel, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## FACTUAL OVERVIEW

**1.   The Promotional Agreement Between Harrah's License and UIM.**

Harrah's License and UIM entered into a Promotional Agreement on or about March 21, 2008, for a three year term of 2008, 2009 and 2010. Harrah's License subsequently assigned the Promotional Agreement to Harrah's Interactive Entertainment, Inc. ("Harrah's Interactive") (and, collectively with Harrah's License, "Harrah's").

Among the numerous benefits afforded to UIM under the Promotional Agreement is the location of UIM's "everestpoker.net" logo for poker tables used at the World Series of Poker event (the "WSOP") during the term of the agreement, with the logo located on both the inside rim and on the table felt under "the flop". This benefit includes those WSOP poker tables featured on television broadcasts by ESPN and parties with whom ESPN contracts for the 2008, 2009 and 2010 WSOP events. ESPN's broadcasting responsibilities in connection with the WSOP are described in a separate agreement between Harrah's Interactive and ESPN to which UIM is not a party. Moreover, under the Promotional Agreement Harrah's License granted UIM a broad range of promotional activities for the term of the agreement, including providing UIM with expansive rights to use the mark WORLD SERIES OF POKER in advertising and promotions, on-site signage and exposure at each WSOP event, substantial hospitality consideration for each WSOP event (numerous hotel rooms and access to hospitality spaces and amenities), and entry into the WSOP event.

The Promotional Agreement does not require that the broadcast of the WSOP take place in any particular country or countries or that it be broadcast for any particular number of hours or to any particular number of households. Broadcasts in regard to France are not mentioned anywhere in the Promotional Agreement.

///

///

06247-44/592849_2.doc

## 2. Performance of the Promotional Agreement.

To date, Harrah's has provided UIM with the promotional activities and consideration called for under the Promotional Agreement. In 2008 and 2009, the WSOP was broadcast by ESPN and parties with whom ESPN has contracted in over 170 countries, including the United States, collectively to over 250 million households, for over 6,000 broadcast hours.

UIM made all of the payments required under the Promotional Agreement in 2008. However, in early 2009 UIM missed the first payment it owed pursuant to the Promotional Agreement and representatives of UIM voiced a complaint that the promotions of other companies seemed to UIM to be better than the promotions to which UIM was entitled under the Promotional Agreement. Representatives of UIM also brought to Harrah's License's attention that in a handful of broadcasts of the WSOP event made by RTL9 (based in Luxembourg) that were broadcast into France, one of the everestpoker.net logos (the one on the table under the flop) was either covered up or obscured. UIM's representatives complained that the logo of an alleged competitor of UIM also appeared on the poker tables during those broadcasts.

Representatives of Harrah's License attended a meeting with representatives of ESPN and UIM in Connecticut in early 2009 to discuss and resolve UIM's concerns. UIM's representatives asked for a "make good" and specifically requested that ESPN find an appropriate broadcaster to air the WSOP in Spain and Italy, which collectively had approximately the same number of potential households as France, and that during such broadcasts no logo of any alleged competitor be shown on the poker tables.

Shortly after the meeting, ESPN agreed that it would find an appropriate broadcaster for the WSOP in Spain and Italy for no additional consideration from UIM. ESPN and Harrah's also agreed that Everest Poker could be described as the presenting sponsor of the WSOP during the broadcasts in certain European countries, though not in France.

UIM thereafter made each of the three payments required for the 2009 WSOP.

///

///

///

06247-44/592849_2.doc

3. **UIM's Attempted Termination of the Promotional Agreement and Suit Against Harrah's License.**

UIM made the first payment owed for the 2010 WSOP on or about January 2, 2010. However, on April 1, 2010 UIM sent Harrah's License a purported termination letter and filed the instant lawsuit (Docket No. 1). Concurrent with filing its lawsuit, UIM also filed an *Ex Parte* Application for Temporary Restraining Order (Docket No. 2).

4. **The Order Denying UIM's *Ex Parte* Application for Temporary Restraining Order.**

On April 2, 2010, this Court entered an Order denying UIM's Application for Temporary Restraining Order (Docket No. 7). Specifically, this Court held, in relevant part:

> The temporary restraining order essentially requests the court to enforce the terms of the agreement entered into by the parties. However, plaintiff clearly states that it has already provided defendant with written notice that it is terminating the contract and will not make any further 2010 fee payments to defendant. Plaintiff requests the court to enforce the same agreement that it recently terminated.
>
> \*\*\*
>
> Furthermore, plaintiff has not demonstrated a threat of immediate and irreparable injury, loss or damage as required under Federal Rule of Civil Procedure 65. Plaintiff first discovered that defendant was allegedly in breach of the agreement in January 2009. Plaintiff fails to provide a sufficient explanation as to why it will suddenly suffer from an immediate harm at this time.

*See* Order, at pp. 1, 2.

## LEGAL STANDARD FOR ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF

"A preliminary injunction is an extraordinary and drastic remedy" and may be issued "only upon a clear showing that the plaintiff is entitled to such relief." *Munaf v. Geren*, 128 S.Ct. 2207, 2219 (2008) (quotation omitted); *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 129 S.Ct. at 374. The party seeking a preliminary injunction bears the burden of proving the existence of each of these elements. *Id.*

///

06247-44/592849_2.doc

Additionally, in order to obtain a preliminary injunction the moving party must demonstrate that there is likely to be irreparable injury in the immediate future. *Midgett v. Tri-County Metro. Trans. Dist. of Oregon*, 254 F.3d. 846, 850 (9th Cir. 2001). The "plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following trial. The preliminary injunction must be the only way of protecting the plaintiff from such harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3rd Cir. 1992) (quotation omitted). Furthermore, where a party is seeking to alter the status quo rather than preserve it, the moving party faces the even higher burden of showing a "'clear' or 'substantial' likelihood of success." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (citation omitted). The absence of irreparable, imminent harm is fatal to a preliminary injunction motion. *Midgett*, 254 F.3d at 850-51 (affirming denial of preliminary injunction motion because the plaintiff did not "face an immediate threat of irreparable harm").

## CONCLUSION

This Court concludes that UIM has not established that it is faced with any imminent threat of present or future irreparable injury. To the contrary, UIM has merely stated that it may face some speculative injury based upon the possibility of potential broadcasts of WSOP events in France. Yet, UIM has not provided this Court with any veritable evidence that UIM's assertions in regard to any such speculative injury may in fact occur.

Additionally, UIM has clearly stated that it provided Harrah's with written notice that purportedly terminates the Promotional Agreement, and that UIM will not make any further 2010 fee payments to Harrah's License based upon the purported termination. UIM again requests that this Court enforce through injunctive relief the same agreement that it recently purports to have terminated.

In all respects, UIM has not demonstrated a threat of immediate and irreparable injury, loss or damage as required under Federal Rule of Civil Procedure 65. UIM's inability to meet its burden by making a clear showing of this requisite element in support of its Motion for PI is fatal. "Damages, not an injunction, are the normal remedy for breach of contract. This is particularly true where the allegedly breaching party is solvent and therefore will be able to

06247-44/592849_2.doc

respond in damages." *Regents of the Univ. of Cal. v. Enron Energy Servs., Inc.*, 2001 U.S. App. LEXIS 8788, at *1 (9th Cir. May 3, 2001) (citation omitted); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994). UIM therefore has an adequate remedy at law for its claims against Harrah's License, to the extent any such claims ultimately have merit.

Thus, even if UIM were able to establish that it is likely to succeed on the merits of its claims, that the balance of equities in this matter tips in its favor, or that entry of an injunction herein is in the public interest—issues as to which this Court offers no opinion at this time—UIM's Motion for PI is fatally defective because UIM has failed to demonstrate the element of irreparable harm. UIM's Motion for Preliminary Injunction is therefore DENIED.

DATED: May 13, 2010.



UNITED STATES DISTRICT JUDGE



06247-44/592849_2.doc